UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOEBIUS,<br><br>Plaintiff,<br><br>v.<br><br>HB USA HOLDINGS, INC., d/b/a HUDA BEAUTY, et al.,<br><br>Defendants. | Case No. CV 21-2109 CJC (PVCx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS AND FURTHER RESPONSES TO REQUESTS FOR PRODUCTION (Dkt. No. 39)** |

I.

INTRODUCTION

Plaintiff Michael Moebius brings this copyright action against Defendant HB USA Holdings, Inc., d/b/a Huda Beauty, and unnamed Does. (*See* Complaint ("Compl.") Dkt. No. 1). Pending before the Court is Plaintiff's Motion to Compel Documents and Further Responses to Requests for Production to HB USA Holdings, Inc. ("Motion," Dkt. No. 39). The parties filed a Joint Stipulation pursuant to Local Rule 37-2, ("Jt. Stip.," Dkt. No. 39-1), including the declaration of David A. Sergenian in support of the Motion, ("Sergenian Decl.," Dkt. No. 39-2, Exhs. 1-9 at Dkt. Nos. 39-3 to 39-11), and the declaration of Shaun A. Mathur in opposition to the Motion. ("Mathur Decl.," Dkt. No.

39-12; Exhs. A-I at Dkt. Nos. 39-13 to 39-21).[1] Plaintiff subsequently filed an optional Supplemental Memorandum as authorized by Local Rule 37-2.3. ("Supp. Memo.," Dkt. No. 40).

The Court held a hearing on the Motion via Zoom on May 24, 2022. For the reasons stated below and on the record at the hearing, the Motion is GRANTED IN PART and DENIED IN PART. Defendant shall serve supplemental written responses and produce responsive documents, if any, as required by this Order within **twenty-one days** of the date of this Order. If no previously-unproduced documents exist responsive to a Request for which further production is ordered, the written response shall affirmatively so state, supported by a declaration under oath from the appropriate Huda Beauty employee.

## II.

## BACKGROUND ALLEGATIONS

Plaintiff is a visual artist, known for his paintings of iconic celebrities. (Compl. ¶ 8). Defendant, a cosmetics company with a large social media following, was launched in 2013 and currently sells more than 140 products online or in-store. (*Id.* ¶¶ 11-12). At issue in this case is Plaintiff's image of Audrey Hepburn peeking behind Tiffany-blue colored window blinds, which has a copyright registered with the U.S. Copyright Office. (*Id.* ¶ 9). In 2019, Defendant commissioned a photoshoot of its principal, Huda Kattan, which resulted in two photographs that Plaintiff alleges exploited his copyrighted work of Audrey Hepburn without permission. (*Id.* ¶¶ 13, 19 (the "HB Photos")). Defendant used

---

[1] Several exhibits attached to the Sergenian and Mathur declarations are not consecutively paginated. Where an exhibit is consecutively paginated, citations to the exhibit will follow the internal pagination. Where an exhibit is not consecutively paginated, the Court will refer to the CM/ECF-generated pagination on the Court's docket. The Court reminds the parties that Local Rule 11-3.3, which provides, "[a]ll documents shall be numbered consecutively at the bottom of each page," applies to exhibits as well as briefs.

the photos in promotional materials, online news articles, and on social media.[2] (*Id.* ¶¶ 13-18). Plaintiff asserts claims for copyright infringement, (*id.* ¶¶ 20-25), and vicarious and/or contributory copyright infringement. (*Id.* ¶¶ 26-31).

## III.

## THE DISPUTED REQUESTS AND THE PARTIES' CONTENTIONS

Plaintiff seeks production of Defendant's license agreements, both where Defendant is the licensee, and where Defendant is the licensor. (Jt. Stip. at 8-9). Specifically, the requests as propounded demand production of:

> RFP No. 75: All agreements, including all drafts thereof, in which HUDA is a licensee of one or more copyrighted works, trademarks, patents, or any other intellectual property.

> RFP No. 78: All agreements, including all drafts thereof, in which HUDA is a licensor of any copyrighted works, trademarks, patents, or any other intellectual property.

(*Id.*). Plaintiff states that he is willing to forego discovery of draft agreements and limit the requests to only fully executed agreements, and notes that he has withdrawn other production requests not at issue here seeking communications relating to the requested licenses. (*Id.* at 14) (citing RFP Nos. 76-77, 79-80). Furthermore, at the hearing, Plaintiff stated that he is not seeking patent or trademark licenses, or any other kind of license apart from licenses for copyrighted works.

---

[2] According to Defendant, it used the HB Photos to promote the launch of its Life Liner eyeliner project "from August 18, 2019 to October 24, 2019 on its Instagram page, and from August 21, 2019 to no later than October 14, 2019 on its website." (Jt. Stip. at 19) (citing Mathur Decl. ¶ 7 & Exh. F at 13). Therefore, the alleged infringement occurred over the space of approximately two months in the late summer and early fall of 2019.

3

|   |   |
|---|---|
| 1 | Defendant served identical responses and objections to RFP Nos. 75 and 78: |
| 2 | Defendant incorporates by reference its General Objections and Objections |
| 3 | to Definitions.  Defendant objects to this Request as vague, ambiguous, |
| 4 | overbroad, and unduly burdensome, to the extent it seeks documents not |
| 5 | relevant to the claims and defenses in this case, or of such marginal |
| 6 | relevance that its probative value is substantially outweighed by the burden |
| 7 | imposed on Defendant in having to search for and produce such documents. |
| 8 | Defendants further object to this Request as overbroad and irrelevant to the |
| 9 | extent it seeks agreements, including drafts, of intellectual property that is |
| 10 | not mentioned in the Complaint or at issue in this action.  Defendant further |
| 11 | objects to this Request on the grounds and to the extent it seeks information |
| 12 | protected from disclosure by the attorney-client privilege, the work product |
| 13 | doctrine, and/or any other applicable privilege, immunity, or protection. |

Subject to and without waiver to the foregoing General and Specific Objections, Defendant responds as follows:  Defendant agrees to produce nonprivileged documents responsive to this Request to the extent the documents relate to the photographs reproduced in Paragraph 13 and Paragraph 16 of the Complaint that are identified through a reasonable and proportionate search, and to the extent such documents exist.[3]

(*Id.*).

Plaintiff contends that the licenses he seeks are relevant to his claims for damages. (*Id.* at 10-11).  Plaintiff explains that to measure actual damages in a copyright infringement case based on a "hypothetical license," the plaintiff must establish "'the

---

[3] The two HB Photos at issue in this action are reproduced in paragraphs 13 and 16 of the Complaint.

amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'" (*Id.* at 11) (quoting *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006)). To determine a reasonable market value, courts may look in part to an infringer's licenses with third parties for comparable works, *i.e.*, so-called "benchmark licenses." (Jt. Stip. at 11-12). According to Plaintiff, RFP Nos. 75 and 78 "were designed to discover relevant information concerning benchmark licenses with respect to a hypothetical license for [Plaintiff's] work." (*Id.* at 13).

Plaintiff dismisses Defendant's written objections that contend that RFP Nos. 75 and 78 are vague, ambiguous, overbroad and unduly burdensome as "boilerplate." Plaintiff notes that Defendant has not identified what is vague and ambiguous about the requests. Additionally, Defendant has not even disclosed how many licenses it would be required to produce to respond to the requests (as narrowed to fully executed agreements), much less presented any evidence showing why it would be burdensome to produce them. (*Id.* at 13-14). Indeed, Plaintiff maintains that Defendant's failure to address its burden objections in its portion of the Joint Stipulation constitutes an admission that the objections are groundless. (Reply at 3). Plaintiff similarly rejects Defendant's objection that the requests impermissibly seek production of agreements not mentioned in the Complaint because "'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'" (Jt. Stip. at 15) (quoting *Independent Living Center of Southern California v. City of Los Angeles*, 296 F.R.D. 632, 635-36 (C.D. Cal. 2013)). Furthermore, because Plaintiff has narrowed the requests to executed agreements, no privilege is at issue. (Jt. Stip. at 15).

Plaintiff also notes that he proposed during the meet and confer process to limit the requests to agreements in which Defendant is the licensee, not the licensor, and to exclude from the scope of the requests "any licenses unrelated to copyright," including trademark

and patent licenses.  (*Id*.) (quoting Sergenian Decl., Exh. 5 at 3).  However, Plaintiff states that Defendant rejected that proposal, and instead later stated that it would produce only licenses in which Defendant "paid a license fee to use a third party's painting or photograph for the purpose of inspiring a new original photograph."  (*Id*. at 16) (citing Sergenian Decl., Exh. 7 at 1).  Plaintiff contends that Defendant's proposal is overly restrictive because it is likely that there are few, if any, license agreements that fit into this very specific category, (*id*. at 16), and even if some agreements did exist, Plaintiff is permitted at the discovery stage to receive "a broader array of licenses to and from third parties in order to construct a hypothetical license."  (*Id*. at 17).  Plaintiff further contends that Defendant's compromise offer was not made in good faith because Defendant still has not identified a single license agreement that would fall into that specific category, and the three licenses it did produce "do not include *any* licenses for use of a third party's painting or photograph for the purpose of inspiring a new original photograph."  (Reply at 4).  Therefore, Defendant's purported offer to compromise was in effect an offer to produce no licenses.  (*Id*. at 4-5).

Finally, Plaintiff argues that Defendant is confusing discoverability with admissibility, and observes that Defendant may object at trial to the admission of any of the licenses it produces in response to RFP Nos. 75 and 78.  (*Id*.; *see also* Reply at 1). Plaintiff further maintains that because Defendant rejected Plaintiff's offer to compromise regarding agreements in which Defendant is the licensor and agreements pertaining to patents and trademarks, there has been no abandonment or waiver of his right to pursue that discovery.  (Reply at 5).

Defendant argues that Plaintiff's request for all of Defendant's intellectual property licenses should be denied because the "only licenses relevant to the calculation of a hypothetical license fee are those for comparable uses of comparable works."  (Jt. Stip. at 17).  Defendant states that it "searched for licenses it entered into to use a third party's

6

painting or photograph in marketing materials and produced the only potentially responsive licenses."[4] (*Id.* at 18). In particular, Defendant maintains that Plaintiff's request for licenses of all intellectual property of any type is "wildly overbroad," and licenses in which Defendant is acting as the licensor are "wholly irrelevant." (*Id.* at 20) (citing Sergenian Decl. Exh. 4 at 5). Furthermore, Defendant insists that Plaintiff abandoned his requests for that evidence in the meet and confer process. (Jt. Stip. at 21 (citing Sergenian Decl. Exh. 4 at 3); Jt. Stip. at 23-25).

Defendant also argues that, based on his interrogatory responses, Plaintiff does not even appear to be seeking a hypothetical license fee theory of damages. (*Id.* at 26). When asked to describe the losses he has suffered and how they are calculated, including specifically "any loss of revenue" and "any loss of licensing opportunities, Plaintiff stated in his First Supplemental Response to Defendant's interrogatories that "Huda's unauthorized use of the image in question has decreased the value of the work and the reputation of Moebius as an artist." (*Id.*) (quoting Mathur Decl. Exh. I at 14).[5] Even if Plaintiff had indicated an intention to pursue a hypothetical license fee theory of damages, Defendant argues that it is simply incorrect to maintain "that every license in which Huda Beauty has paid or been paid a license fee for all types of intellectual property -- including patents, trademarks, and trade secrets -- is relevant to the calculation of a hypothetical license fee in this case." (*Id.* at 26-27). According to Defendant, courts typically calculate a hypothetical license fee by reference to the amount for which the copyright

---

[4] Plaintiff states that Defendants produced three licenses on May 2, 2022, after Plaintiff had submitted its portion of the Joint Stipulation to Defendant and the day before the Joint Stipulation was filed. (Reply at 2). Plaintiff further notes that without an order compelling production of licensing agreements, there is "no protection against the possibility" that Defendant "cherry-picked the most favorable licenses to its cause" through "strategic selective disclosures." (*Id.*).

[5] Plaintiff counters that he specifically objected to Interrogatory No. 9 on the ground that it sought premature expert discovery, and the establishment of a hypothetical license fee "is within the ambit of an expert witness." (Reply at 3). Furthermore, there can be no surprise because "the parties have met and conferred on the relevance of the requested licenses for months." (*Id.*).

owner has licensed the work to the defendant or others in the past, or evidence of licensing fees paid to other artists for the use of their works. (*Id*. at 27-28). However, to be relevant and not overly speculative, the infringer's licensing agreements with other artists must be for "comparable uses of comparable works." (*Id*. at 28) (quoting *Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013). Defendant maintains that license agreements for "radically" or "far different" license agreements "are not discoverable." (Jt. Stip. at 31) (quoting *Sciele Pharma, Inc. v. Lupin, Ltd.*, 2013 WL 12161442, at *2 (D. Del. Jan. 31, 2013)).

Plaintiff notes that Defendant "has never even attempted to explain the relevance of licenses for patents, trademarks, trade secrets, and the like," as production of such licenses would encompass licenses for "a patented chemical composition used in a facial scrub, a trade secret formula used in a skin moisturizer, a retailer's or Huda Beauty's name mark in marketing materials, Kattan's or another celebrity's name and likeness in a television commercial," etc. (Jt. Stip. at 31). Furthermore, even licenses for copyrighted works are not necessarily comparable, as "the value of a license for a copyrighted music collection, video clip, or brochure has no relevance to the value of a license for a single copyrighted painting." (*Id*. at 32). Additionally, Plaintiff's requests would require production of licenses regardless of how the copyrighted materials were actually used, including for "research and development, interior decorating, and the like." (*Id*.). Defendant also notes that license agreements in which it is the licensor shed no light on what Defendant would be willing to pay for a copyrighted work, and agreements that fall outside the time when the alleged infringement occurred are similarly not useful benchmarks.[6] (*Id*. at 33). In sum, Defendant maintains that Plaintiff's Motion should be denied because it has already

---

[6] However, Defendant states that it did offer to produce licensing agreements, to the extent that they exist, in which it was either the licensee or licensor with respect to the two photographs at issue in the Complaint, reproduced at paragraphs 13 and 16. (Jt. Stip. at 34). According to Defendant, even though "such licenses would be among the most probative of any of the licenses" Plaintiff has requested, Plaintiff rejected the proposal. (*Id*.).

produced "licenses it entered into to use a third party's photograph in marketing materials," which it contends are "the only licenses arguably for comparable uses of comparable works," and the "only types of licenses that may be considered when calculating a hypothetical license fee." (*Id*. at 35) (citing Mathur Decl. ¶ 21).

## IV.
## STANDARDS

### A. Scope Of Permissible Discovery

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The relevance standard is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Doherty v. Comenity Capital Bank & Comenity Bank*, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Sci. Games Corp. v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) ("Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope."). "Proportionality focuses on the marginal utility of the discovery sought." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D. N.Y. 2016) (internal quotation marks and citation omitted).

While the scope of permissible discovery may be broad, because discovery must be both relevant and proportional to the needs of the case, the right to discovery, even plainly relevant discovery, is not limitless. The 2015 amendments to Rule 26 "were designed to protect against over-discovery and to emphasize judicial management of the discovery process, especially for those cases in which the parties do not themselves effectively manage discovery." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 308 (S.D. Ind. 2016); *see also Davita HealthCare Partners, Inc. v. United States*, 125 Fed. Cl. 394, 398 (2016) (the 2015 amendments to the Federal Rules "contribute to the overall goal of regulating the time and expense of litigation"). However, the larger and more complex the case, the more even relatively voluminous discovery may be considered proportional. The party resisting discovery bears the burden of showing why discovery should not be allowed. *Doutherd v. Montesdeoca*, 2018 WL 3008867, at *2 (E.D. Cal. June 15, 2018) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

**B.    Federal Rule Of Civil Procedure 34**

Federal Rule of Civil Procedure 34 requires production of responsive documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). The requesting party must describe the items to be produced with "reasonable particularity."

Fed. R. Civ. P. 34(b)(1). "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (internal quotation marks omitted). Following a reasonable investigation to locate responsive materials, a responding party must serve a written response to each request either stating that it will produce copies of the documents requested or identifying the grounds for any objection. The December 1, 2015 revisions to the Federal Rules amended Rule 34 to require that objections to requests for production be stated with specificity, and that the responding party affirmatively state whether any documents are being withheld pursuant to an objection.[7] Fed. R. Civ. P. 34(b)(2)(B)-(C).

Unlike Rule 33(b), which requires that responses to interrogatories be verified, "Rule 34(b) does *not* require a party's response to a document request to be verified by the party. Rather, responses to document requests need only be certified by an attorney or unrepresented party." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 222 (E.D. Pa. 2008) (emphasis in original). However, where a response to a production request is neither a representation that responsive documents will be produced nor a legal objection to the request, but rather an affirmative statement that all responsive

---

[7] The Rule 34 Advisory Committee notes state in relevant part:

> Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34. The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources. When there is such an objection, the statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection.

Fed. R. Civ. P. 34, Adv. Comm. Notes (2015 Amendment).

documents have already been produced or that no responsive documents exist in the responding party's possession, custody, or control, many courts require that the response be verified. *See, e.g., Vazquez-Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 154 (D. P.R. 2010) ("[W]hen a response to a [request for] production for documents is not a production or an objection, but an answer, the party must answer under oath."); *Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194, 200 (D. Conn. 2014) ("[A] response that all documents have been produced *does* require attestation.") (emphasis in original). This Court agrees that verification of a response to a production request that makes an affirmative statement of fact is the better practice.

Finally, a requesting party's mere suspicion that additional documents must exist despite a responding party's representation that they do not is an insufficient basis to grant a motion to compel. *See, e.g., Bethea v. Comcast*, 218 F.R.D. 328, 329 (D. D.C. 2003) (requesting party's suspicion that responding party failed to produce responsive documents does not justify compelled inspection); *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 311 (D. D.C. 2000) (a party's mere suspicion that its opponent must have documents that it claims not to have does not warrant granting a motion to compel). Rather, the moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld. *See Carter v. Dawson*, 2010 WL 4483814, at *5 (E.D. Cal. Nov. 1, 2010) (defendants' assertion that they are unable to locate responsive documents does not provide a ground for granting a motion to compel "unless Plaintiff can identify a specific document that Defendants have withheld"); *Ayala v. Tapia*, 1991 WL 241873, at *2 (D. D.C. Nov. 1, 1991) (denying motion to compel where moving party could not identify documents that were withheld).

# V.

# DISCUSSION

The law in this Circuit on the use of a hypothetical license to determine damages in a copyright infringement action is well-settled. As the Ninth Circuit explains:

> Under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover [1] the actual damages suffered by him or her as a result of the infringement, and [2] any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." "[A] plaintiff in a § 504(b) action must establish [a] causal connection" "between the infringement and the monetary remedy sought." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir.2004). "'Actual damages' are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir.1985). Although "actual damages" can be awarded in the form of lost profits, hypothetical-license damages also constitute an acceptable form of "actual damages" recoverable under Section 504(b). *See Polar Bear Prods.*, 384 F.3d at 708-09. To calculate the "market value" of the injury to the plaintiff based on a hypothetical-license theory, we look to "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work." *Wall Data Inc. v. L.A. Cnty. Sheriff's Dept*, 447 F.3d 769, 786 (9th Cir. 2006) (internal quotation marks omitted).
>
> We have never required a plaintiff in a copyright infringement case to show that it would have licensed the infringed material. . . . A copyright

13

holder has the right to refuse to license its work and should not be penalized for exercising that right. *See Stewart v. Abend*, 495 U.S. 207, 228-29, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990).

*Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014); *see also id*. at 1088 ("Hypothetical-license damages assume rather than require the existence of a willing seller and buyer."); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001), as amended (May 15, 2001) ("The award of the infringer's profits examines the facts only from the infringer's point of view. If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing. The award of the owner's actual damages looks at the facts from the point of view of they copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act.").

Accordingly, "'it is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation.'" *Wall Data*, 447 F.3d at 786 (quoting *Polar Bear Prods*, 384 F.3d at 709). The Ninth Circuit has long instructed that "[e]xcessively speculative claims of damages are to be rejected." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985). The "market value approach" to determining the worth of a hypothetical license "is an objective, not a subjective, analysis." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002). "To establish the amount of a hypothetical lost license fee, evidence may be presented of a reasonable market value for the license fee using a history of comparable licenses or 'benchmark' licenses in the industry." *Gray v. Perry*, 2019 WL 2992007, at *2 (C.D. Cal. July 5, 2019) (citing *Polar Bear Prods.*, 384 F.3d at 708); *see also Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 359 (S.D. N.Y. 2003) ("[P]ast licensing can serve as a benchmark for measuring the fair market value of a reasonable license fee for the

Photograph."). "Evidence of licensing fees paid to other artists for the use of other works . . . is not overly speculative when the benchmark licenses contemplate comparable uses of comparable works." *Dash*, 731 F.3d at 319; *see also Raimondi v. Olenicoff*, 2015 WL 9703485, at *2 (C.D. Cal. July 7, 2015) ("Typically, a license price is established through objective evidence of benchmark transactions, such as licenses previously negotiated for comparable use of the infringed work, and benchmark licenses for comparable uses of comparable works") (internal quotation marks and citation omitted); *Nolan v. Calello*, 2021 WL 4621945, at *5 (C.D. Cal. July 8, 2021) (quoting same); *Williams v. Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018) (in the absence of any prior benchmark license agreement between the parties, damages award was not unduly speculative where it was based on evidence of a benchmark license in the industry). The Ninth Circuit cautions that "[a]lthough a copyright plaintiff need not . . . present evidence of 'benchmark' agreements in order to recover hypothetical-license damages, it may be difficult for a plaintiff to establish the amount of such damages without undue speculation in the absence of such evidence." *Oracle Corp.*, 765 F.3d at 1093.

Here, Plaintiff seeks Defendant's intellectual property licenses, unlimited by time, in which Defendant was either the licensee (RFP No. 75) or the licensor (RFP No. 78). With respect to RFP No. 78, it is unnecessary for the Court to address whether Plaintiff abandoned his request to seek licenses in which Defendant was the licensor. Agreements reflecting the amounts that Defendant was willing to accept for the use by others of *its* intellectual property (of any kind) does not have any clear correlation to the amounts that Defendant (or any reasonable willing buyer) would *pay* for the right to use a creator's copyrighted images in marketing materials. Plaintiff's willingness to forego this discovery during meet and confer negotiations, while not dispositive, strongly suggests that even Plaintiff does not consider this discovery essential to the prosecution of his case. As such, even if the discovery sought by RFP No. 78 could in some unidentified way contribute to the establishment of a hypothetical license, which the Court does not find,

the contribution would be vanishingly small, and requiring Defendant to produce such documents would not be proportional to the needs of this case. Accordingly, the Motion to Compel is DENIED with respect to RFP No. 78, and no further response is required.

However, license agreements in which Defendants is the licensee may, within certain parameters, be relevant and proportional to the needs of the case and thus be discoverable. However, here, too, the scope of the discovery Plaintiff seeks in response to RFP No. 75 is overbroad. Plaintiff has not articulated any persuasive argument as to why Defendant's agreements to license third party patents or trademarks could have any reasonable bearing on his damages calculation, and the Court can discern none. Indeed, as mentioned above, Plaintiff appeared to concede that patent and trademark licenses were not relevant to his damages claims and need not be produced. Accordingly, the Motion to Compel is DENIED with respect to RFP No. 75 to the extent that it seeks production of licenses relating to non-copyright intellectual property, such as patents and trademarks.

Even with these modifications, the Court does not find that Plaintiff is entitled to *all* of the copyright licenses in which Defendant is the licensee, without regard to the comparability of the copyrighted works to the works at issue and the uses to which those copyrighted works were put. The Court agrees with Defendant that agreements in which Defendant licensed the right to use images (such as photographs, paintings, or other visual art work) for marketing purposes are likely to be the most relevant to the construction of a hypothetical license in this case. However, the Court also agrees with Plaintiff that *discoverability* is more expansive than *admissibility*, and that he is entitled to a wider range of copyright licenses than just those for photographic works. Accordingly, the Motion to Compel is GRANTED with respect to Dkt. No. 75 to the extent that it seeks fully executed copyright licenses in which Defendant is the licensee of copyrighted 2- and 3-dimensional visual art works, including, but not limited to, photographs, paintings, drawings, sketches, caricatures, sculpture, pottery, etc., for use in marketing and

advertising, and limited to the period between October 31, 2017 and October 31, 2021. The purpose of this modification is to limit production to executed license agreements in which Defendant is the licensee for the use of copyrighted visual art works that were used, or anticipated to be used, in marketing and advertising campaigns during the period when the alleged infringement occurred.

Furthermore, Plaintiff is also entitled to a supplemental written response to RFP No. 75 that conforms with the revisions to Rule 34. Defendant's assertion of boilerplate objections, such as "vague and ambiguous," "unduly burdensome," etc., without *any* explanation as to what part of the production request is vague and ambiguous or unduly burdensome, violates the requirement that objections to a request for production be stated with specificity. Fed. R. Civ. P. 34(b)(2)(B); *see also A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper -- especially when a party fails to submit any evidentiary declarations supporting such objections. . . . Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper."). However, because the Court has narrowed the scope of RFP No. 75 and is ordering Defendant to produce documents responsive to the request as modified, if any such documents exist, and is compelling production of only fully-executed agreements that obviate any privilege concerns, Defendant's supplemental written response may not assert objections. However, if, after a reasonable search, Defendant determines that it has no further documents responsive to the modified request that it has not already produced, the written response shall so state, and shall be supported by an affidavit by the Huda Beauty employee who conducted or supervised the search for responsive documents, describing at a high level the steps taken to identify potentially responsive licenses and affirming that no additional responsive documents exist.

## VI.

## CONCLUSION

Plaintiff's Motion to Compel further responses to RFP Nos. 75 and 78 is GRANTED IN PART and DENIED IN PART. The request for an order compelling a further response to RFP No. 78 is DENIED. The request for an order compelling a further response to RFP No. 75 is GRANTED IN PART. Defendant is ORDERED to serve and produce, within **twenty-one days** of the date of this Order, a supplemental written response and documents responsive to RFP No. 75, as modified as follows:

> All fully executed copyright licenses in which Defendant is the licensee of copyrighted 2- and 3-dimensional visual art works, including, but not limited to, photographs, paintings, drawings, sketches, caricatures, sculpture, pottery, etc., for use in marketing and advertising, and limited to the period between October 31, 2017 and October 31, 2021.

If no further responsive documents exist, the written response shall so state as required by this Order and shall be supported by a declaration under oath from the appropriate Huda Beauty employee, describing at a high level the steps taken to identify potentially responsive licenses and affirming that no additional responsive documents exist.

IT IS SO ORDERED.

DATED: May 25, 2022

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE